UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MAX FOOTE CONSTRUCTION COMPANY, L.L.C.      CIVIL ACTION

VERSUS                                       NO. 18-2584

MWH CONSTRUCTORS, INC.                       SECTION: M (3)

### ORDER & REASONS

Before the Court are defendant MWH Constructors, Inc.'s Motion to Dismiss Plaintiff's First Amended and Supplemental Complaint (R. Doc. 22), and defendant MWH Constructors, Inc.'s Motion to Dismiss Plaintiff's Second Amended and Supplemental Complaint (R. Doc. 34) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] Plaintiff Max Foote Construction Company, L.L.C. ("MFCC") filed oppositions to both motions.[2] Defendant MWH Constructors, Inc. ("MWH") filed a reply memorandum in support of its motion to dismiss MFCC's First Amended and Supplemental Complaint.[3] MFCC filed a surreply memorandum in opposition to MWH's motion to dismiss MFCC's First Amended and Supplemental Complaint.[4] Having considered the parties' memoranda and the applicable law, the Court issues this Order & Reasons.

---

[1] An amended pleading supersedes the pleading it modifies, and the original pleading no longer performs any function in the case. 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1476 (3d ed. 2018). However, a defendant is not required to file a new motion to dismiss when an amended pleading is introduced while its motion is pending. *Id.* Instead, the court may consider the motion as being addressed to the amended pleading when some of the defects raised in the original motion remain in the new pleading. *Id.* MWH's two motions to dismiss are nearly identical and address allegations that are raised in both the first and second amended complaints. Thus, the Court construes MWH's Motion to Dismiss Plaintiff's First Amended and Supplemental Complaint (R. Doc. 22) as addressed to MFCC's Second Amended and Supplemental Complaint (R. Doc. 29).

[2] R. Docs. 25 & 38.

[3] R. Doc. 33.

[4] R. Doc. 37.

1

## I. BACKGROUND

This action arises out of a contract dispute between MFCC and MWH. Non-party American Water Operations & Maintenance ("AWOM") is the prime contractor on a project involving the demolition and removal of two preexisting water treatment plants, and the design and construction of two new wastewater treatment plants known as the North Fort and South Fort Plants, located on Fort Polk in Vernon Parish, Louisiana.[5] On November 8, 2013, MWH entered into a subcontract with AWOM to perform work on the project.[6] Pursuant to its contract with AWOM, MWH obtained payment bonds from Federal Insurance Company ("Federal"), Fidelity and Deposit Company of Maryland ("Fidelity"), and Zurich American Insurance Company ("Zurich") to secure MWH's payment obligations to its lower-tier subcontractors and suppliers.[7]

On December 30, 2013, MWH entered into a subcontract with MFCC to perform work on the project (the "Subcontract").[8] MFCC alleges that it experienced numerous delays, resequencings, disruptions, and interferences on its work for MFCC that were out of its control.[9] As an example, MFCC alleges that on June 15, 2017, it informed MWH that it could not perform any further work because another subcontractor had not yet completed necessary predecessor work.[10] Thus, on July 20, 2017, MFCC notified MWH in an email that MFCC would temporarily relocate some equipment and personnel from the project until the predecessor work was completed and MFCC could resume its work under the Subcontract.[11] MFCC claims that it was at all times ready, willing, and able to perform under the Subcontract.[12] On August 14, 2017, MWH sent a letter to MFCC terminating the Subcontract, claiming that MFCC abandoned the project.[13]

---

[5] R. Doc. 29 at 2.
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] R. Doc. 29 at 3.
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.* at 3-4.

On March 12, 2018, MFCC filed this civil action against MWH in the 22nd Judicial District Court, Parish of St. Tammany, State of Louisiana, alleging that MWH wrongfully terminated the Subcontract and that MWH owes MFCC for its work on the project.[14] MWH removed the action to the United States District Court for the Eastern District of Louisiana alleging diversity and federal-question subject-matter jurisdiction under 28 U.S.C. §§ 1332 and 1331, respectively.[15] Thereafter, MWH filed a motion to dismiss.[16] The Court granted MFCC leave to file its First Amended and Supplemental Complaint, and dismissed as moot MWH's motion to dismiss.[17]

On May 3, 2018, MWH filed its Motion to Dismiss Plaintiff's First Amended and Supplemental Complaint.[18] MFCC opposed the motion, and also filed a motion for leave to file its Second Amended and Supplemental Complaint.[19] The Court granted MFCC's motion for leave to file its Second Amended and Supplemental Complaint.[20] Thereafter, the Court granted leave to MWH to file a reply in support of its Motion to Dismiss Plaintiff's First Amended and Supplemental Complaint,[21] and to MFCC to file a surreply in opposition to MWH's Motion to Dismiss Plaintiff's First Amended and Supplemental Complaint.[22]

On June 22, 2018, MWH filed a Motion to Dismiss Plaintiff's Second Amended and Supplemental Complaint, which is nearly identical to MWH's Motion to Dismiss Plaintiff's First Amended and Supplemental Complaint.[23] MFCC filed an opposition in which it adopted its opposition and surreply to MWH's Motion to Dismiss Plaintiff's First Amended and

---

[14] R. Doc. 1-2 at 5-6.
[15] R. Doc. 1 at 1-3. It is undisputed that there is complete diversity between MWH, which is a citizen of Delaware and Colorado, and the members of MFCC, who are citizens of Louisiana, Arkansas, Alabama, South Carolina, Georgia, Texas, Missouri and Mississippi. It is also undisputed that there is more than $75,000 in controversy.
[16] R. Doc. 8.
[17] R. Doc. 21.
[18] R. Doc. 22.
[19] R. Docs. 24 & 25.
[20] R. Doc. 28.
[21] R. Doc. 32.
[22] R. Doc. 36.
[23] R. Doc. 34.

Supplemental Complaint.[24] MFCC also stated that, during a June 7, 2018 status conference, counsel and the Court determined that the filing of MFCC's Second Amended and Supplemental Complaint "should not moot MWH's" Motion to Dismiss Plaintiff's First Amended and Supplemental Complaint because that motion is "directed at the identical prompt pay and unjust enrichment/*quantum meruit* claims" that are asserted in both the first and second amended complaints.[25]

MFCC's Second Amended and Supplemental Complaint adds the sureties, Federal, Fidelity and Zurich, as defendants.[26] In the Second Amended and Supplemental Complaint, MFCC alleges that MWH owes it at least $1,949,337.03 for its work on the project, exclusive of delay damages and other additional compensation and damages.[27] MFCC also claims that it is entitled to compensatory damages for lost profits, escalated materials and equipment costs, lost productivity, inefficiencies and other unspecified extra costs and damages that resulted from the delays, changed and unforeseen conditions, resequencings, disruptions, and interference with its work.[28]

MFCC raises several claims against MWH and its sureties. In Count I, MFCC alleges a breach-of-contract claim against MWH, arguing that MWH wrongfully terminated the Subcontract and failed to make certain required payments to MFCC.[29] Count II alleges claims against the payment bonds under "La. Rev. Stat. Ann. §§ 38:2246 and 9:3902, Louisiana Acts 1918, No. 225, §§ 1-2; New Jersey law, federal law and/or any other applicable law(s)."[30] MFCC alleges that the sureties are liable, *in solido*, with MWH for all amounts due to MFCC.[31] In Count III, MFCC alleges that MWH violated prompt-pay laws by failing to reduce MFCC's

---

[24] R. Doc. 38.
[25] *Id.* at 2.
[26] R. Doc. 29 at 1-2. The addition of these defendants did not destroy diversity subject-matter jurisdiction because Federal is a citizen of Indiana and New Jersey; Fidelity is a citizen of Maryland; and Zurich is a citizen of New York and Illinois.
[27] *Id.* at 4.
[28] *Id.*
[29] *Id.*
[30] *Id.* at 6.
[31] *Id.* at 5.

4

retainage from 5% to 2.5% as required by the Subcontract and failing to pay MFCC for past due amounts within 30 days of MWH's receipt of payment.[32] MFCC alleges that MWH's failure to pay MFCC after receipt of payment constitutes violations of Section 4.14 of the Subcontract and applicable prompt-pay laws, "including but not limited to the provisions of La. Rev. Stat. Ann. § 9:2784, N.J. Stat. Ann § 2A:30A-2, 31 U.S.C. §§ 3901, *et seq.*, and/or any and all other applicable law."[33] MFCC alleges that it is entitled to recover all penalties, interest, attorneys' fees, and other damages as authorized by the applicable law due to MWH's failure to pay promptly.[34] Finally, in Count IV, MFCC alleges that it is entitled to payment from MWH under the theories of unjust enrichment and *quantum meruit*, because MWH has received payment for MFCC's work and failed to pay MFCC.[35]

MWH's motions to dismiss are directed at Counts III and IV. As to Count III, MWH argues that MFCC's prompt-pay claims are governed by federal law pursuant to the federal enclave doctrine, including Prompt Pay Act, 31 U.S.C. §§ 3901, *et seq.*, and thus, MFCC cannot maintain a claim under the prompt-pay statutes of Louisiana, La. R.S. 9:2784, or New Jersey, N.J. Stat. Ann. § 2A:30A-2.[36] With respect to Count IV, MWH argues that MFCC cannot state causes of action for the equitable doctrines of unjust enrichment or *quantum meruit* under either Louisiana or New Jersey law because MFCC has viable causes of action for breach of contract and under the federal Prompt Pay Act.[37]

## II. LAW AND ANALYSIS

### a. Rule 12(b)(6) Standard

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned,

---

[32] *Id.* at 6.
[33] *Id.* at 7.
[34] *Id.*
[35] *Id.*
[36] R. Doc. 22-1 at 3-8; R. Doc. 34-2 at 4-9.
[37] R. Doc. 22-1 at 8-11; R. Doc. 34-2 at 9-14.

5

the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). The statement of the claim must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555-57).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, if the facts pleaded in the complaint "do not permit the court to infer more than a mere possibility of misconduct, the complaint has allege – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*. The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Id.* However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V. (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). A court may also take judicial notice of certain matters, including public records and government websites. *Dorsey v. Protfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2007); *see also Hawk Aircargo, Inc. v. Chai.*, 418 F.3d 453, 457 (5th Cir. 2005). Motions to dismiss are disfavored and rarely granted. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

    b.    **Analysis**

        (i)    **Count III – Prompt-Pay Claims**

MFCC alleges that MWH's failure to reduce MFCC's retainage and failure to pay MFCC for past due amounts within 30 days of MWH's receipt of payment constitute a breach of Section 4.14 of the Subcontract and a violation of prompt-pay laws, including La. R.S. 9:2784, N.J. Stat. Ann. § 2A:30A-2, and 31 U.S.C. §§ 3901, *et seq.*[38] MWH argues MFCC's prompt-pay claims are governed by federal law, and as a result, MFCC cannot maintain claims under the prompt-pay statutes of Louisiana or New Jersey.[39]

A choice-of-law analysis is required to determine which law governs MFCC's prompt-pay claims. MWH removed this action citing diversity and federal-question subject-matter jurisdiction.[40] A federal court exercising diversity subject-matter jurisdiction applies the choice-of-law rules of the state in which it sits to determine which substantive law will apply. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 498-97 (1941). Conversely, when exercising federal-question subject-matter jurisdiction, a federal court applies federal common law choice-

---

[38] R. Doc. 29 at 4.
[39] R. Doc. 22-1 at 3-10; R. Doc. 34-1 at 4-9.
[40] R. Doc. 1 at 1-4.

of-law principles to determine which substantive law will apply. *Haynsworth v. The Corporation*, 121 F.3d 956, 962 (5th Cir. 1997). However, when subject-matter jurisdiction is based on both diversity and federal question, as here, a federal court follows the choice-of-law rules of the state in which it sits. *Totalplan Corp. of Am. v. Colborne*, 14 F.3d 824, 832 (2d Cir. 1994). Thus, this Court will apply Louisiana's choice-of-law rules.[41]

MFCC's prompt-pay claims against MWH arise under the Subcontract. Louisiana's general choice-of-law rule applicable to conventional obligations provides:

> Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
>
> That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in [Louisiana Civil Code] Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.

La. Civ. Code art. 3537. However, when a contract specifies the law applicable thereto, the contract is "governed by the law expressly chosen or clearly relied upon by the parties, except to

---

[41] In this case, diversity subject-matter jurisdiction is certainly present (R. Docs. 1 & 29). The Court recognizes that MWH alleges that this Court also has federal-question subject-matter jurisdiction based on the federal enclave doctrine (R. Doc. 1). In cases involving a federal enclave, the choice-of-law rule is controlled by the Federal Enclave Act, 16 U.S.C. § 457. However, MFCC disputes that the federal enclave doctrine applies to this matter (R. Docs. 25 & 38). Thus, the application of Louisiana choice-of-law rules is especially appropriate where, as here, the removing defendant has not yet carried its burden of demonstrating that federal enclave jurisdiction existed at the time of removal. Questions have been raised as to whether the portion of Fort Polk upon which the work under the Subcontract was performed was actually a federal enclave at the time of removal. Fort Polk was established as a military base in 1941 (R. Doc. 25-2 at 1). In 2008, the federal government began acquiring land from the State of Louisiana to expand Fort Polk by over 42,000 acres (R. Doc. 25-3 at 1). The first acquisition was completed by 2012, before the Subcontract was signed in December 2013 (R. Doc. 25-3 at 1). Further, the federal government owns only approximately sixty-percent of the land comprising Fort Polk, and leases the rest from the State of Louisiana (R. Doc. 25-1 at 1). In light of these facts regarding the federal government's ongoing expansion of Fort Polk and the federal government's leasing certain portions of the land upon which Fort Polk sits, MWH has not definitively established that the federal enclave doctrine applies. MWH has not proven that MFCC performed work on land that was actually owned by the federal government considering that some of the land comprising Fort Polk is leased. Consequently, this Court will apply Louisiana's choice-of-law rules.

the extent that law contravenes the public policy of the state whose law would otherwise be applicable under Article 3537." La. Civ. Code art. 3540. The parties may choose the law of any state, regardless of whether "that state has a particular factual, geographical, or legal relationship with the contract" subject to the limitation that the chosen law must not contravene "the public policy of the state whose law would have been applicable to the issue 'but for' the parties' choice." *Id.* at Revision Cmt. (f).

The Subcontract contains the following choice-of-law clause:

> **34.1 Governing Law.** This Subcontract shall be governed by and construed in accordance with the laws of the State of New Jersey, excluding its choice of law rules, except that any provision in this Subcontract that is (i) incorporated by reference from the FAR; or (ii) incorporated in full text or by reference from any agency regulation that implements or supplements the FAR; or (iii) that is substantially based on any such agency regulation or FAR provision, shall be construed and interpreted according to the federal common law of government contracts as enunciated and applied by federal judicial bodies, boards of contract appeals and quasi-judicial agencies of the federal government.

Thus, pursuant to Article 3540, New Jersey law generally applies to the Subcontract, unless one of the exceptions related to the Federal Acquisition Regulations ("FAR") applies.[42]

MWH argues that the third FAR exception applies to Section 4.14 of the Subcontract, which is titled "Prompt Payment."[43] MWH contends that Section 4.14 specifically incorporates the federal Prompt Pay Act, and is thus "substantially based" on 48 C.F.R. § 52.232-27 of the FAR, which MWH argues is practically identical to the federal Prompt Pay Act.[44] As such, MWH argues that the federal Prompt Pay Act applies to MFCC's prompt-pay claims.[45]

---

[42] Although the parties did not undertake a choice-of-law analysis in their memoranda, the relevant factors of Article 3537 appear to point to the application of Louisiana law, absent the parties' selection of New Jersey law, considering that MFCC maintains its principal place of business, and the project was located, in Louisiana. Assuming Louisiana law would apply, there is no indication that New Jersey's prompt-pay statute, N.J. Stat. Ann. § 2A:30A-2, contravenes a public policy of Louisiana considering that Louisiana has a similar law, La. R.S. 9:2784.

[43] R. Doc. 22-1 at 6-7; R. Doc. 34-1 at 6-7; R. Doc 33 at 6-7.
[44] R. Doc. 22-1 at 6-7; R. Doc. 34-1 at 6-7; R. Doc 33 at 6-7.
[45] R. Doc. 22-1 at 6-7; R. Doc. 34-1 at 6-7; R. Doc 33 at 6-7.

Section 4.14 provides that an interest penalty is due if the owner of the project "is an agency or instrumentality of the United States Government and the provisions of the Prompt Payment Act, as amended (31 U.S.C. § 3901 et seq.), are applicable *to the Prime Contract*."[46] (Emphasis added.) If these two preconditions are satisfied, Section 4.14 specifies the terms and conditions for the interest penalty that could be due from the contractor to the subcontractor and requires that the subcontract include a similar payment and interest penalty clause in each of the lower-tier subcontracts.[47] The subcontractor is also required to comply with the notice provisions of the federal Prompt Pay Act.[48]

Although Section 4.14 references the federal Prompt Pay Act, it is not "substantially based" on 48 C.F.R. § 52.232-27. Section 52.232-27 specifies the terms and conditions under which "the Government will make invoice payments" for the prompt payment of construction contracts and is far more detailed than Section 4.14 of the Subcontract. Section 4.14, on the other hand, simply incorporates by reference certain limited provisions of the Prompt Pay Act into the Subcontract.[49] Further, Section 4.14 does not dictate that MFCC's prompt-pay claims must be brought only under federal law.[50]

The Prompt Pay Act "confers additional rights and duties on federal contractors and subcontractors." *U.S. ex rel. Cal's A/C & Elect. v. Famous Const. Corp.*, 220 F.3d 326, 328 (5th Cir. 2000). However, many courts have held that the Prompt Pay Act, including 48 C.F.R. § 52.232-27, does not provide a subcontractor with a private right of action against a general contractor. *RAMJ Constr., L.L.C. v. Seola Enter., Inc.*, 2018 WL 3232781, at * 3 (M.D. La. July 2, 2018) (citing *Masonry Sols. Int'l, Inc. v. DWG & Assocs., Inc.*, 2016 WL 1170149, at *4 (E.D. La. Mar. 25, 2016) ("DVA cites several cases expressly holding that [the federal Prompt Pay

---

[46] R. Doc. 22-2 at 7.
[47] *Id.*
[48] *Id.*
[49] R. Doc. 22-2 at 7 (including, specifically, notice provisions and the rate at which any interest is to be computed).
[50] This is not to say that federal law might not provide the baseline for interpreting the limited provisions of the federal Prompt Pay Act or FAR that are incorporated by reference into the Subcontract, but, as will be seen, this is a very different proposition from saying that there exists only a federal claim for prompt payment.

10

Act] does not create an independent cause of action .... The Court's own research buttresses that legal conclusion."); *U.S. ex rel. Duncan Pipeline, Inc. v. Walbridge Aldinger*, 2013 WL 1338392, at *17-18 (S.D. Ga. Mar. 29, 2013); *U.S. ex rel. IES Comm., Inc. v. Cont'l Ins. Co.*, 814 F. Supp. 2d 1, 2-3 (D.D.C. 2011) (citing *L & W Supply Corp. v. Dick Corp.*, 2009 WL 1139569, at *1 (N.D. Fla. Apr. 27, 2009)) (finding a "unanimous conclusion that the Prompt Payment Act does not create a private right of action"); *C & H Contracting of Miss., LLC v. Lakeshore Eng'g Servs., Inc.*, 2007 WL 2461017, at *1 (S.D. Miss. Aug. 24, 2007) ("The few courts addressing the matter have found that there is no private right of action between contractors under the Prompt Payment Act.")). Therefore, MFCC cannot bring a claim against MWH under the federal Prompt Pay Act.

However, the federal Prompt Pay Act permits a subcontractor to bring breach-of-contract and prompt-pay claims against a contractor under state law. The federal Prompt Pay Act provides that it does not "limit or impair any contractual, administrative, or judicial remedies otherwise available to a contractor or a subcontractor in the event of a dispute involving late payment or nonpayment by a subcontractor or deficient subcontract performance or nonperformance by a subcontractor." 31 U.S.C. § 3905(j). Thus, MFCC can bring breach-of-contract and prompt-pay claims against MWH under New Jersey law as the state law that the parties specified would apply to the Subcontract. As a result, MWH's motions to dismiss MFCC's Louisiana prompt-pay claims are GRANTED, but DENIED as to MFCC's prompt-pay claims under New Jersey law. Further, because MFCC, as a subcontractor, does not have a private right of action against MWH under the federal Prompt Pay Act, any such claim aised in the complaint is dismissed.

### (ii) Count IV – Unjust Enrichment/*Quantum Meruit* Claims

MWH argues that MFCC cannot maintain a cause of action for unjust enrichment/*quantum meruit* under either Louisiana or New Jersey law.[51]

#### 1. Choice-of-Law Rules

A claim for unjust enrichment is a quasi-contractual claim. *Minyard v. Curtis Products, Inc.*, 205 So. 2d 422, 432 (La. 1968). As discussed above, this Court is applying Louisiana's choice-of-law rules. Louisiana Civil Code article 3541 states that "[u]nless otherwise provided by the law of this state, the law applicable … to quasi-contractual obligations is determined in accordance with the principles of" the choice-of-law provisions dealing with contractual obligations. Thus, the general rule for determining the law applicable to a contract, stated in Article 3537, governs.

Article 3537 provides that the applicable law is the law of the state whose policies would most seriously be impaired if its law were not applied to the issue. "That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states" considering the contacts each state has to the parties and the transaction, among other factors. La. Civ. Code art. 3537. While the parties did not undertake a choice-of-law analysis in their memoranda, the information made available to the Court therein indicates that Louisiana, not New Jersey, law would apply to MFCC's quasi-contractual claims. The transaction has numerous contacts to Louisiana, including MFCC's principal place of business and the place of performance of the contract. There are no contacts to New Jersey stated in any of the documents before the Court, other than the parties' express choice of New Jersey law to apply to the Subcontract, which choice is not relevant to the law applicable to extra-contractual claims. Therefore, this Court finds that Louisiana law applies to MFCC's claims for unjust enrichment/*quantum meruit*. As a result, MFCC's unjust enrichment/*quantum meruit* claims under New Jersey law are DISMISSED.

---

[51] R. Doc. 22-1 at 8-11; R. Doc. 34-2 at 9-14.

### 2. The Louisiana Unjust Enrichment Claim

Louisiana Civil Code article 2298 provides the basis for an action based on unjust enrichment, or *action de in rem verso*.[52] Article 2298 states: "[a] person who has been enriched without cause at the expense of another person is bound to compensate that person." The Supreme Court of Louisiana has held that the five requirements for establishing a cause of action for unjust enrichment are:

> (1) there must be an enrichment, (2) there must be an impoverishment, (3) there must be a connection between the enrichment and resulting impoverishment, (4) there must be an absence of "justification" or "cause" for the enrichment and impoverishment, and (5) there must be no other remedy at law available to plaintiff.

*Baker v. Maclay Properties Co.*, 648 So. 2d 888, 897 (La. 1995) (citations omitted). Article 2298 expressly states that the remedy of unjust enrichment "is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule." La. Civ. Code art. 2298. A plaintiff is precluded from seeking recovery under a theory of unjust enrichment if he pleads another cause of action, regardless of whether the plaintiff is successful on the other theory of recovery. *Walters v. MedSouth Record Mgmt., LLC*, 38 So. 3d 243, 244 (La. 2010). Thus, if the law provides the plaintiff with another remedy, the plaintiff "has failed to state a cause of action in unjust enrichment." *Id.*

MFCC acknowledges that it cannot seek unjust enrichment damages for the time that the Subcontract was in effect because it has a contractual remedy.[53] However, MFCC argues that it has pleaded unjust enrichment in the alternative, and that it may have an unjust enrichment claim

---

[52] In Count IV, MFCC states that it is bringing a cause of action for "Unjust Enrichment/*Quantum Meruit*." R. Doc. 29 at 7. Unjust Enrichment and *quantum meruit* are not interchangeable under Louisiana law. *See Morphy, Makofsky & Masson, Inc. v. Canal Place 2000*, 538 S. 2d 569, 574-75 (La. 1989). As a civilian concept, *quantum meruit* is the compensation or price owed to a plaintiff for services rendered when the contract is silent as to those amounts. *Id.* at 574 (citing La. Civ. Code art. 1965). "Unfortunately for the purity of the civilian concept of *quantum meruit*, the term is used interchangeably with the common law substantive claims geared to equity also known as *quantum meruit*." *Baker v. Maclay Properties Co.*, 648 So. 2d 888, 898 (La. 1995). MFCC's claim is geared toward equity, not the civilian concept of *quantum meruit*. This conclusion is bolstered by the fact that MFCC states that its claim could arise under New Jersey law, which is common, not civil, law.

[53] R. Doc. 25 at 22.

for damages it incurred as a result of MWH's conduct after the termination of the Subcontract, to the extent that such damages are not governed by the Subcontract.[54]

Under Rule 8 of the Federal Rules of Civil Procedure, a party may allege seemingly inconsistent alternative causes of action. Rule 8(d)(3) provides that "[a] party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). Louisiana law permits unjust enrichment to be pled in the alternative. *See Carrier v. Bank of La.*, 702 So2d 648, 658 (La. 1996) (because the court did not say that plaintiff's unjust enrichment claim, which was pleaded in the alternative to contract claims, should have been dismissed on an exception of no cause of action, it implied that unjust enrichment can be pleaded in the alternative to a remedy at law). Further, other cases decided under Louisiana law indicate that a plaintiff may be able to recover under the theory of unjust enrichment for damages occurring during a time period after a contract ends. *See Commonwealth Capital Corp. v. Enter. Fed. Savings & Loan Ass'n*, 630 F. Supp. 1119, 1204 (E.D. La. 1986) (finding that unjust enrichment may apply after contract ends because those transactions are not governed by the contract); *see also Fogleman v. Cajun Bag & Supply Co.*, 638 So. 2d 706, 709 (La. App. 1994) (finding no clear error in trial court's holding that unjust enrichment applied to disputed commissions after termination of the contract). Therefore, MFCC states an unjust enrichment cause of action that is pleaded in the alternative to the contract claim and may apply to the period after the Subcontract ended. As a result, MWH's motions to dismiss are DENIED as to MFCC's unjust enrichment claim brought under Louisiana law.

### III. CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS ORDERED** that MWH's Motion to Dismiss Plaintiff's First Amended and Supplemental Complaint (R. Doc. 22) and MWH's Motion to Dismiss Plaintiff's Second Amended and Supplemental Complaint (R. Doc. 34) are GRANTED as to MFCC's prompt-pay

---

[54] *Id.*

14

claims brought under Louisiana law and unjust enrichment/*quantum meruit* claim brought under New Jersey law, and DENIED as to MFCC's prompt-pay claim brought under New Jersey law and as to MFCC's unjust enrichment claim brought under Louisiana law.

**IT IS FURTHER ORDERED** that any federal Prompt Payment Act claim raised in MFCC's complaint is dismissed.

New Orleans, Louisiana, this 25th day of October, 2018.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE